IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGE and BARBARA EXUM ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | CASE NO. 2:11-cv-206-MEF |
| ) | (WO – Publish) |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on a March 18, 2011 Notice of Removal (Doc. # 2) filed by Defendants State Farm Fire and Casualty Company ("State Farm") and Ron Abernathy (collectively "Defendants"), and a Motion to Remand (Doc. # 10) filed by Plaintiffs George and Barbara Exum ("Plaintiffs" or individually by name). The issues having been fully briefed, and after careful consideration of the law and the arguments of counsel, the court finds that Plaintiffs' motion to remand is due to be denied.

**I. BACKGROUND**

On April 13, 2010, Plaintiffs filed suit against State Farm, Ron Abernathy, and several fictitious defendants in the Circuit Court of Barbour County, Alabama. The Complaint (Doc. # 2, Attach. 1) sets forth seven causes of action: breach of contract; bad faith handling of Plaintiffs' insurance claim; fraudulent misrepresenation in sale of insurance policy; fraudulent suppression in sale of insurance policy; negligent or wanton misrepresentation or suppression of terms of insurance policy; negligent failure to hire, train, or supervise

Abernathy; and wanton failure to hire, train, or supervise Abernathy.  In the *ad damnum* clause of the Complaint, Plaintiffs seek an unspecified amount of compensatory and punitive damages.

The factual predicate for the Complaint arises out of the Plaintiffs' 1996 purchase of a homeowner's insurance policy from State Farm for a lake house in Abbeville, Alabama. Plaintiffs allege that Abernathy sold them this policy while acting as an agent for State Farm, and that State Farm and Abernathy represented to them that the insurance policy would cover Plaintiffs' property, including a boat dock, for structural damage and loss of use.  Plaintiffs also allege that Defendants represented that the policy would pay the "repair/replacement cost" of the property in the event of a loss.  Based on these representations, Plaintiffs jointly purchased the policy and paid all premiums due on the policy.

However, the undisputed evidence establishes that Abernathy was not involved in the sale of the insurance policy at issue to Plaintiffs.[1]  Abernathy *currently* is an independent contractor agent for State Farm, but he only began selling and servicing State Farm products in June of 2000, several years after the sale of the policy at issue.  (Abernathy Aff. ¶¶ 4-5.) Indeed, the undisputed evidence before the Court establishes that Abernathy did not sell the Plaintiffs' policy, nor any other insurance policies prior to June of 2000.

---

[1] The factual content of this paragraph is taken from Abernathy's affidavit submitted in support of the removal.  (Abernathy Aff. ¶¶ 4-5 (Doc. # 2, Ex. B).)  Plaintiffs have not submitted any evidence to create a material issue as to any of the facts asserted in the Abernathy affidavit.

In February of 2009, very high winds caused significant property damage to Plaintiffs' boat dock. Plaintiffs submitted a claim on their insurance policy and allege that State Farm refused to honor Plaintiffs' claim in violation of the terms of the policy.

Plaintiffs are citizens of Alabama. State Farm is a corporate citizen of Illinois, and Abernathy is a citizen of Alabama. Plaintiffs served Abernathy and State Farm with the Complaint in this action in April of 2010. At that time, State Farm and Abernathy could not determine whether the amount in controversy was sufficient to support subject matter jurisdiction in federal court. During discovery, Defendants attempted to obtain more specificity regarding Plaintiffs' alleged damages. In George Exum's February 16, 2011 deposition, he testified that he and Barbara Exum later sold the home for $175,000, without repair to the damaged dock. (G. Exum Dep. 25 (Doc. # 2, Ex. D).) However, Mr. Exum testified emphatically that the house would have sold for between $325,000 and $375,000 but for the damage to the dock. (G. Exum Dep. 25, 98 ("If that dock had been fixed on that house, that house would have brought $350,000 or $375,000.").)[2] Mr. Exum arrived at that hypothetical selling price based upon the selling prices "other properties had been bringing" and upon the representations of his agent regarding Plaintiffs' property. (G. Exum Dep. 25, 98.)

---

[2] In the midst of this line of questioning, Plaintiffs' attorney confirmed that Plaintiffs were indeed seeking damages for the lost value of the home. (G. Exum Dep. 98 (counsel stating on the record that "part of that is what he testified to earlier about the loss of value when he sold it.").)

3

Within thirty days of this deposition testimony, State Farm and Abernathy jointly filed their Notice of Removal, invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendants argue that Abernathy was fraudulently joined as a defendant in this action and that the amount in controversy exceeded $75,000.

On April 13, 2011, within thirty days of the Notice of Removal, Plaintiffs filed their Motion to Remand. In this motion, they argue only that the Defendants have failed to meet their burden of establishing that the amount in controversy exceeds $75,000. Plaintiffs make one passing reference to Defendants' contention that Abernathy was fraudulently joined.

## II. STANDARD OF REVIEW

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095. "In evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)).

### III.  DISCUSSION

A state court defendant may remove a case to federal court at two procedurally distinct moments in time.  *See* 28 U.S.C. § 1446(b).  First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, the first paragraph of § 1446(b) provides the procedure for removal.  *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001); 28 U.S.C. § 1446(b).  Such a removal must be accomplished "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based."  § 1446(b) (paragraph one).  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ."  § 1446(b) (paragraph two).

Of course, federal diversity jurisdiction under § 1332(a) requires both complete diversity *and* satisfaction of the requisite amount in controversy.  *See, e.g., Allapath Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 762 (11th Cir. 2004).  A case does not become "removable" until both conditions are present.  Defendants contend that Defendant Abernathy's fraudulent joinder was apparent from the face of the Complaint, but that the amount in controversy requirement was "first . . . ascertained" during Plaintiff George Exum's deposition.  § 1446(b) (paragraph two).  In other words, the Complaint as initially

filed was not removable on its face and only became removable when Defendants possessed the requisite jurisdictional information. Accordingly, this is a § 1446(b) paragraph two removal.

**A.     Diversity of Citizenship Requirement**

    *1.     Fraudulent Joinder Standard*

Section 1332(a) requires that the parties be "citizens of different States[.]" § 1332(a)(1); *see also Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under [§ 1332(a)] requires 'complete diversity' – the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

However, even if "on the face of the pleadings, there is a lack of complete diversity, an action may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent." *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Id.* The courts have recognized three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the resident (non-diverse) defendant. *Id.*; *see also Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005).

As to the first type of fraudulent joinder, the only type at issue here, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a [*reasonable*] *possibility* of stating a valid cause of action in order for the joinder to be legitimate."  *Triggs*, 154 F.3d at 1287; *see also Legg* 428 F.3d at 1325 n.5 (stating that the "potential for legal liability must be reasonable, not merely theoretical") (internal quotation marks omitted).

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."  *Legg*, 428 F.3d at 1322 (quoting *Pacheco de Perez*, 139 F.3d at 1380). "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Federal Rule of Civil Procedure 56]." *Id.* at 1322-23 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).  Accordingly, all *contested* issues of substantive fact and any uncertainties as to the current state of the law must be resolved in the plaintiff's favor.  *See id.* at 1323; *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

### 2. *Fraudulent Joinder Analysis*

The court must determine whether there is any reasonable possibility that a state court would determine that any one of Plaintiffs' alleged theories of recovery states a viable cause of action against Defendant Abernathy, the only non-diverse defendant.

On these uncontested facts, there simply is no possibility that Plaintiffs can state a viable cause of action against Abernathy. *See Legg*, 428 F.3d at 1322-23 (fraudulent joinder analysis resembles that of summary judgment); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (stating in summary judgment context "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact"). As to the causes of action arising out of the 1996 purchase of their policy, Plaintiffs cannot sustain claims against Abernathy because he was not at all involved in that transaction. (Abernathy Aff. ¶¶ 4-5 (stating that he did not enter this line of work until 2000).) As to the other claims, they necessarily fail for the reasons stated in Defendants' submissions and relied-upon authorities. Plaintiffs make no serious attempt to dispute this point other than a vague assertion that Defendants have cited no support for their contention. That vague assertion is flatly wrong. Accordingly, the Court finds that Plaintiffs fraudulently joined Defendant Abernathy. Thus, his citizenship is due to be disregarded.[3] Having disregarded Abernathy's citizenship and that of the "fictitious defendants" in accordance with law, the Court finds that complete diversity of citizenship exists. Accordingly, the Court must address the amount in controversy requirement.

---

[3] For the same reasons stated herein, and because the court ultimately denies Plaintiffs' Motion to Remand, Defendant Abernathy's Motion for Summary Judgment (Doc. # 5) is due to be granted.

**B.     Amount in Controversy Requirement**

*1.     Standard*

Section 1332(a) also requires that the "matter in controversy exceed[ ] the sum or value of $75,000, exclusive of interest and costs . . . ." *Id.*  When a defendant removes a case under the second paragraph of § 1446(b) based upon the amount in controversy, the law in the Eleventh Circuit regarding his or her burden is confused and confusing.

The court begins, but does not end, with this statement of law:  Where the complaint alleges unspecified damages, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007) ; *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) ("[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the jurisdictional requirement." (emphasis added)), *overruled on other grounds by Cohen v. Office Depot*, *Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000).  At issue is the impact of *Lowery* on a § 1446(b) paragraph two removing defendant's burden of establishing the jurisdictional amount when faced with a timely § 1447(c) motion to remand.

As stated above, this case was removed to federal court under the second paragraph of § 1446(b), based upon Plaintiff George Exum's deposition testimony, which Defendants

9

argue is the "other paper" by which it "first . . . ascertained" that the case was removable. Under the second paragraph of § 1446(b), "a case becomes removable when three conditions are present: there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." *Lowery*, 483 F.3d at 1213 n.63. The first two conditions are easily satisfied. As stated above, deposition testimony qualifies as other paper, *Lowery*, 483 F.3d at 1213 n.62, and the testimony was received by Defendants directly from Plaintiff George Exum. Thus, only *Lowery*'s third condition for a proper § 1446(b) paragraph two removal remains at issue: Whether Plaintiff George Exum's deposition testimony establishes to a sufficient degree that the damages in this case exceed $75,000.

The *Lowery* case appears to have elaborated a different and more rigorous burden than the preponderance of the evidence burden of *Tapscott*. The *Lowery* court phrased the burden this way: "[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff . . . and determines whether that document and the notice of removal *unambiguously establish* federal jurisdiction." *Id.* at 1213. These apparently conflicting burdens have been a source of confusion in this circuit. *See, e.g., SUA Ins. Co. v. Classic Home Builders, LLC*, No. 10cv388, 2010 WL 4664968, at *4 (S.D. Ala. Nov. 17, 2010) (stating that *Lowery*'s "'unambiguously establish' standard necessarily is more exacting than a preponderance of the evidence standard, and both of them

cannot simultaneously apply"); *Allen v. Thomas*, No. 3:10cv742, 2011 WL 197964, at *5 (M.D. Ala. Jan. 20, 2011) (Watkins, J.) (applying *Lowery*'s unambiguously establish standard but questioning "the logic of the standard"). The question is whether these burdens are capable of co-existence and, ultimately, which one to apply. In short, this court believes that *Tapscott*'s preponderance of the evidence burden applies to a court's substantive jurisdictional inquiry and that *Lowery*'s unambiguously establish burden replaces *Tapscott*'s burden when a plaintiff challenges the procedural propriety of a removal under the second paragraph of § 1446(b) by timely moving to remand under § 1447(c).

When a plaintiff – as Plaintiff has done here – files motion to remand within thirty days of a defendant's notice of removal, *see* § 1447(c), the plaintiff is deemed to be "challeng[ing] [both] the [procedural] propriety of the *removal* itself" as well as "whether *subject matter jurisdiction* exists at all." *Lowery*, 483 F.3d at 1213 n.64. However, when a plaintiff's motion to remand is not filed in accordance with § 1447(c), that plaintiff may challenge only the court's subject matter jurisdiction. *See* § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction *must* be made within 30 days after the filing of the notice of removal under § 1446(a)." (emphasis added)); *see also Triggs*, 154 F.3d at 1291 n.9 (noting that "there is no time limit for motions to remand that challenge subject matter jurisdiction"). In other words, a motion to remand may challenge both the procedural propriety of the removal as well as the substantive inquiry of whether subject matter jurisdiction exists, or it may challenge only the basic question of the

existence of subject matter jurisdiction. *Lowery*, 483 F.3d at 1194 ("Removal of state court actions to federal court involves both jurisdictional and procedural considerations."); *see also Pretka*, 608 F.3d at 756.

The language found within the second paragraph of § 1446(b) – titled "Procedure for removal" – is the source of *Lowery*'s arrival at an unambiguously establish standard. Paragraph two of § 1446(b), unlike paragraph one, contains this language: "from which it may first be ascertained that the case is one which is or has become removable[.]" § 1446(b) (paragraph two). Although § 1446(b) has been described as legislating merely "the [procedural] question of *when* an action is removable," *Lowery*, 483 F.3d at 1212, interpretation of the above-quoted clause, and specifically the word "ascertained," has resulted in the introduction of a substantive component to the second paragraph of § 1446(b).[4] However, it is important to observe that the enlistment of this standard in *Lowery* and the discussion of it in *Pretka* took place within larger discussions regarding the procedural requirements of removal. The *Lowery* court revealed the unambiguously establish standard and simultaneously placed in context its application: "Thus, under § 1446(b), in assessing the propriety of removal . . . ." *Id.* at 1213. As stated above, § 1446 is a procedural statute. And the *Lowery* court's other uses of the phrase "propriety of removal" indicate that

---

[4] This line of reasoning began with the Tenth Circuit, and made its way to the Fifth Circuit in *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (stating that the word "ascertained" "seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally" and then so holding). *Bosky* was employed by the *Lowery* court when it adopted the "unambiguously establish" standard, *Lowery*, 483 F.3d at 1213 n.63, and it was cited approvingly by the *Pretka* court in *dicta* on § 1446(b) paragraph two removals, *Pretka*, 608 F.3d at 760.

it contemplated the *procedural* propriety of removal. *See id.* at 1213-14 n.64 (stating that where the plaintiff does not timely challenge the removal under § 1447(c), "the court is no longer considering *the propriety of the removal*, but instead, whether *subject matter jurisdiction* exists at all"). Finally, the facts of the *Lowery* case make clear that it involved a procedural challenge: the plaintiffs in *Lowery* timely filed a motion to remand, *id.* at 1188-89, and therefore preserved arguments that the removal was procedurally improper under § 1446(b). Likewise, the *Pretka* court's discussion of *Bosky* found itself confined to the procedural context. *Id.* at 756, 760 (discussion found within heading entitled "III. The Procedural Requirements for Removal").

Due to the accepted reading of paragraph two of § 1446(b), which now includes a substantive or quasi-substantive component, perhaps it is best not to think of § 1446(b) as entirely procedural, or to emphasize the procedural versus substantive dichotomy.[5] Perhaps the means to reconcile the preponderance of the evidence standard of *Tapscott* and the unambiguously establish standard of *Lowery* is to focus on whether the plaintiff is entitled to the protections of § 1446(b). In other words, when the plaintiff complies with § 1447(c) by filing a timely motion to remand, the plaintiff is then entitled to argue that the removal is defective under § 1446(b), which includes application of the *Lowery* burden of proof instead

---

[5] One may still construe § 1446(b) paragraph two's apparently substantive burden of proof as elaborating a procedural inquiry. If the document received by the defendant from the plaintiff does not unambiguously establish that the case is or has become removable, then the thirty day window to file the notice of removal is never triggered, and the notice of removal is untimely.

of the *Taspcott* burden of proof.[6]  However, when a plaintiff untimely moves to remand, the law is clear that the court shall consider only whether subject matter jurisdiction exists at all, which, in the context of assessing the removal of a complaint containing a demand for unliquidated damages, is governed by a preponderance of the evidence standard.[7]  *See* § 1447(c); *see also Lowery*, 483 F.3d at 1213-14 n. 64 (citing *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972)); *Tapscott*, 77 F.3d at 1356-57.

These musings aside, the "unambiguously establish" burden found in *Lowery* governs this § 1446(b) paragraph two removal.  *See Allen*, 2011 WL 197964, at *5; *see also Jackson v. Litton Loan Servicing, LP*, No. 09cv1165MEF, 2010 WL 3168117, at *4 (M.D. Ala. Aug. 10, 2010) ("Until the Eleventh Circuit changes the rule set forth in *Lowery*, this Court will

---

[6] For example, imagine a case that is removed on documents not received from the plaintiff, but the documents do establish the amount in controversy to a legal certainty.  In such a case, if a plaintiff does not timely file its motion to remand according to § 1447(c), the plaintiff has forfeited the procedural protection of the second paragraph of § 1446(b) that the "other paper" be "recei[ved] by the defendant" from the plaintiff.  *See Pretka*, 608 F.3d at 755 ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard.").  But if the plaintiff timely moves to remand under § 1447(c), the motion should be granted even though the documents establish the jurisdictional amount to a legal certainty.  So it goes with the "unambiguously establish" burden of proof.  When the plaintiff untimely moves to remand, the plaintiff has forfeited the ability to rely upon the "first . . . ascertained" language of § 1446(b), the source of *Lowery*'s burden of proof, and the court only considers whether subject matter jurisdiction exists under *Tapscott*'s preponderance of the evidence standard.

[7] This proposition – that a party's burden of proof is determined by the timeliness of a filing – has cousins in our legal system.  For example, when an appellant fails to raise an issue before the district court, and then first raises it on appeal, the appellate court reviews the appellant's contention for plain error.  *See, e.g., United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002).  Likewise, a party who timely files objections to a magistrate judge's recommendation is entitled to *de novo* review of the portions to which objection is made.  *See* 28 U.S.C. § 636(b).

continue to apply it when considering a notice of removal under the second paragraph of § 1446(b).").

## 2. *Amount in Controversy Discussion*

The other paper on which Defendants rely – Plaintiff George Exum's deposition testimony – unambiguously establishes that the amount in controversy requirement has been satisfied. Plaintiffs mistakenly believe that Defendants have removed this case solely on allegations in the Notice of Removal. (Mot. to Remand 4-5.) Plaintiffs miss the mark because the salient document – the "other paper" – upon which this removal is based is the transcript of George Exum's deposition testimony in which he states that State Farm's failure to pay for the repair or replacement of the dock caused Plaintiffs to lose between $150,000 to $200,000 on the sale of the house. Mr. Exum was not throwing out a number at the prodding of defense counsel. *See Allen*, 2011 WL 197964, at *5-6. Rather, Mr. Exum's unambiguous statement was based upon the selling prices of other houses in the area and upon his agent's representations to him. The statement clearly establishes that the amount in controversy exceeds $75,000. This is true even if only half of those damages are fairly attributable to each plaintiff. While the Court may not aggregate the claims of multiple plaintiffs, it may aggregate a single plaintiff's claims resting on various theories of liability. Thus, the most conservative estimate of the breach of contract (Count I) damages yields an amount in controversy of $75,000 per Plaintiff for that count alone. Adding $.01 (or even the equivalent of one Somali schilling) for the combined value of all of the other claims –

including the request for punitive damages – results in an amount in controversy per plaintiff that exceeds $75,000. *See Roe v. Michelin, N.A.*, 613 F.3d 1058, 1064 (stating that "when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate"). Thus, Defendants have presented evidence sufficient to unambiguously establish the amount in controversy for diversity jurisdiction exists in this case.

    Plaintiffs' affidavits do not change the court's analysis. As part of their submissions in support of their Motion to Remand, Plaintiffs include a joint Affidavit (Doc. # 13), wherein they agree to stipulate that they will enter into an irrevocable agreement to limit the damages they seek in this action to $74,000. Such a stipulation does not support remand because it has no bearing on the salient issue, namely, the amount in controversy at the time the suit was filed and removed. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751; *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*." (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939))). Thus, "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." *Poore v. Am.-Amicable Life Ins. Co. of Tx.*, 218 F.3d at 1287, 1290–91 (11th Cir. 2000), *overruled on other grounds*

16

by *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007); *see also Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("If jurisdiction was proper at that date [the date of removal], subsequent events, even the loss of the required amount in controversy, will not operate to divest the court of jurisdiction."). While post-removal evidence is permissible, "the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Sierminski v. Transouth Finan. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (internal quotes omitted). Put another way, the court may consider information submitted after the case has been removed only if it informs its determination of whether subject matter jurisdiction existed at the time of removal. *See, e.g., Brooks v. Pre-Paid Legal Servs., Inc.,* 153 F. Supp. 2d 1299, 1300-1302 (M.D. Ala. 2001); *Hill v. MONY Life Ins. Co.,* 75 F. Supp. 2d 1328, 1329-1330 (M.D. Ala. 1999); *Moss v. Voyager Ins. Cos.,* 43 F. Supp. 2d 1298, 1303 (M.D. Ala. 1999). While George Exum's deposition testimony clearly sheds light on his expected damages at the time the lawsuit was commenced and removed, the promises of George and Barbara Exum regarding limitations on their damages from the date they executed their joint Affidavit in April of 2011, after the notice of removal was filed, have no relevance to the issues before the Court.

## IV.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Plaintiffs' Motion to Remand (Doc. # 10) is DENIED.  It is further ORDERED that Defendant Ron Abernathy's Motion for Summary Judgment (Doc. # 5) is GRANTED.

DONE this 31st day of October, 2011.

/s/ Mark E. Fuller<br>
UNITED STATES DISTRICT JUDGE